## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICIA BETTGER,** | : | **CIVIL ACTION NO. 1:13-CV-2030** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | |
| **CROSSMARK, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court is defendant Crossmark, Inc.'s ("Crossmark")
motion (Doc. 26) for summary judgment and motion (Doc. 34) *in limine*. For the
reasons that follow, the court will grant the motion for summary judgment in part
and deny it in part. Additionally, the court will grant Crossmark's motion (Doc. 34)
*in limine*.

## I.    Factual Background[1]

Crossmark is a provider of in-store marketing and retail merchandising
services for consumer products such as Frito-Lay, General Mills, Fuji Film,
Johnson & Johnson and Kraft Foods. (Doc. 1 ¶ 3). Crossmark's range of services
includes in-store promotional events, in-store merchandising, and supply chain
optimization assistance at supermarkets, convenience stores, and drug stores. (Id.)

---

[1] In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to Bettger, the
nonmoving party. See *infra* Part III.

Plaintiff Patricia Bettger ("Bettger") has been an hourly-paid Retail Representative for Crossmark since 1999.  (Doc. 1 ¶ 2).  Bettger worked full-time for Crossmark in 2008 and the beginning of 2009, but Crossmark switched her to a part-time schedule effective as of the March 27, 2009 pay period.  (Doc. 28 ¶ 2; Doc. 31 at 5-6 ¶ 2; Doc. 33 ¶ 2).  Bettger performs most of her work duties at various store locations in Pennsylvania.  (Doc. 1 ¶ 16).  When she was working full-time, Bettger began her day by connecting to Crossmark's website from her home on her personal computer to check email and to receive instructions on work assignments. (Id. ¶¶ 17-18).  Bettger was not specifically required to connect to Crossmark's website from her home, and she could have connected from literally any internet-accessible computer device.  (Doc. 28 ¶ 16; Doc. 31 at 19 ¶ 16; Doc. 33 ¶ 16).  Bettger also spent approximately twenty minutes each morning loading her car with work materials.  (Doc. 1 ¶ 23).  After loading her car, Bettger departed home for her first assigned work location.  (Id. ¶ 24).  Bettger used her personal vehicle to drive to her assigned stores, and Crossmark did not require her to clean or perform maintenance on her vehicle.  (Doc. 28 ¶ 18; Doc. 31 at 20 ¶ 18; Doc. 33 ¶ 18).  Crossmark only paid Bettger for her morning commute time if the drive exceeded 40 miles or one hour.  (Doc. 28 ¶ 20; Doc. 31 at 21 ¶ 20; Doc. 33 ¶ 20).

Bettger essentially established her own work schedule.  She decided which of her assigned stores to visit on which days, and in what order to visit them.  The only overarching requirement imposed upon Bettger was that she complete all of her assignments within a two-week time frame.  (Doc. 28 ¶ 15; Doc. 31 at 19 ¶ 15; Doc. 33

¶ 15).  In addition, she was required to perform certain assignments on a particular day of the week.  (Id.)

Bettger recorded her work hours in Crossmark's online SalesTrak system. (Doc. 28 ¶ 6; Doc. 31 at 7 ¶ 6; Doc. 33 ¶ 6).  Other than payroll support staff, only Bettger could enter her time or modify her entries in SalesTrak.  (Doc. 28 ¶ 7; Doc. 31 at 7 ¶ 7; Doc. 33 ¶ 7).  Aside from the time reports submitted into SalesTrak, neither Crossmark nor Bettger has any other record of the hours of Bettger's work. (Doc. 28 ¶ 10; Doc. 31 at 11 ¶ 10; Doc. 33 ¶ 10).  It is undisputed that Bettger was paid for all the time that she reported in SalesTrak.  (Doc. 28 ¶ 8; Doc. 31 at 8-10 ¶ 8; Doc. 33 ¶ 8).

Crossmark's written policy requires Bettger to accurately record the time she worked into the SalesTrak system.  (Doc. 28 ¶ 11; Doc. 31 at 11-13 ¶ 11; Doc. 33 ¶ 11). It also instructs Bettger to report the actual amount of time she spent on administrative tasks, and not to use a "rule of thumb" of estimating 15 or 30 minutes per day for such tasks.  (Doc. 28 ¶ 12; Doc. 31 at 13-15 ¶ 12; Doc. 33 ¶ 12). The written policy further states that supervisors are not allowed to "suggest" that employees work extra time without reporting it.  (Doc. 28 ¶ 13; Doc. 31 at 15-17 ¶ 13; Doc. 33 ¶ 13).  According to the written policy, employees are not permitted to work overtime without advance approval.  (Doc. 28 ¶ 14; Doc. 31 at 17-19 ¶ 14; Doc. 33 ¶ 14).  The policy dictates that if an employee works unapproved overtime, they will be paid but they may be subject to discipline for non-compliance.  (Id.)

The parties dispute whether Bettger's supervisor, Jane Swaggert ("Swaggert"), instructed Bettger consistent with this written policy. According to Bettger, Swaggert periodically advised her: "we have to keep the week under 40 hours unless there's an exception." (Doc. 31-1, Ex. 1 at 134:23-24). When Bettger informed Swaggert that she was working more time than she was allowed, Swaggert responded, "Well, my hands are tied. You can only—you can't put that in." (Doc. 31-1, Ex. 1 at 190:5-8). Significantly, however, Bettger does not recall whether Swaggert told her to keep her reported weekly hours under 40 even if she actually worked more than 40 hours, or simply told her to get her work done within 40 hours. (Doc. 28 ¶ 37; Doc. 31 at 31 ¶ 37; Doc. 33 ¶ 37; Doc. 31-1, Ex. 1 at 138:9-19). On at least six occasions during her period of full-time employment in 2008 and early 2009, Bettger reported and was paid for overtime. (Doc. 28 ¶ 29; Doc. 31 at 25-26 ¶ 29; Doc. 33 ¶ 29).

Bettger also alleges that Swaggert orally instructed her to limit her administrative time to 30 minutes a day or 2.5 hours a week. (Doc. 28 ¶ 31; Doc. 31 at 26 ¶ 31; Doc. 33 ¶ 31). She estimates that during her full-time employment in 2008 and early 2009, she performed administrative tasks for 5.5 to 8 hours per week that she did not report and for which she was not paid. (Doc. 28 ¶ 27; Doc. 31 at 25 ¶ 27; Doc. 33 ¶ 27). However, Bettger was never threatened with termination if she entered more than 30 minutes of administrative time in a single day, and Bettger had never heard of anyone else being terminated for that reason. (Doc. 28 ¶ 34; Doc. 31 at 29 ¶ 34; Doc. 33 ¶ 34). Indeed, she entered more than 30 minutes a day or

4

2.5 hours a week of administrative time into SalesTrak on numerous occasions in 2008, and was paid for it. (Doc. 28 ¶ 33; Doc. 31 at 28-29 ¶ 33; Doc. 33 ¶ 33). Furthermore, the parties do not dispute that Bettger never complained to anyone in Crossmark's Payroll or Human Resources Departments, or to corporate headquarters, about Swaggert's alleged instructions. (Doc. 28 ¶ 35; Doc. 31 at 29-30 ¶ 35; Doc. 33 ¶ 35).

## II.   __Procedural History__

On February 9, 2011, Bettger filed a consent form to join the putative collective action <u>Postiglione <i>et al.</i> v. Crossmark, Inc.</u>, Civ. A. No. 11-960, in the Eastern District of Pennsylvania. Plaintiffs in that action sought to certify a nationwide class of Crossmark Retail Representatives for violations of Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <i>et seq.</i>, based on allegations of unpaid overtime. On November 14, 2012, the court denied the <u>Postiglione</u> plaintiffs' motion for conditional collective action certification because plaintiffs were not similarly situated and failed to establish any illegal company-wide policy on behalf of Crossmark. (Civ. A. No. 11-960, Doc. 68). The court also found that Bettger was improperly joined to the action because plaintiffs' claims did not rise out of a common transaction or occurrence. (<u>Id.</u>)

On January 24, 2013, Bettger filed an individual complaint in this case in the Eastern District of Pennsylvania. (<u>See</u> Civ. A. No. 13-0406). On June 27, 2013, the court ordered Bettger's case to be transferred to the Middle District of Pennsylvania. (Doc. 13). The court also denied plaintiff's motion for equitable

tolling of the statute of limitations for the 71 days between her dismissal from Postiglione on November 14, 2012 and the filing of her individual complaint on January 24, 2013. (Id.) The court did so without prejudice to plaintiff's right to renew the motion for equitable tolling in this court, but Bettger never filed such a renewed motion. (Id.)

Crossmark filed the instant motion (Doc. 26) for summary judgment on February 18, 2014. Crossmark also filed the instant motion (Doc. 34) *in limine* on May 15, 2014. The motions are fully briefed and ripe for disposition.

## III.   Legal Standard

### A.   Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### B.     Motion *in Limine*

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401.  Irrelevant evidence is inadmissible. FED. R. EVID. 402.  The court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

## IV.    Discussion

Crossmark moves for summary judgment on the entirety of Bettger's complaint.  To the extent that the court does not award Crossmark summary judgment, Crossmark also moves the court to exclude from trial any argument, testimony, or evidence relating to several issues.  The court will address each motion in turn.

### A.     Motion for Summary Judgment

Congress enacted the FLSA for the purpose of protecting all covered workers from substandard wages and oppressive working hours.  Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a).  The FLSA requires that if an employee works for more than forty hours per week, he or she must be compensated for any overtime hours at a rate of one and a half times the employee's regular rate.  29 U.S.C. § 207(a)(1).  Under § 216(b), an employer who violates this provision is liable to the affected employee for any unpaid overtime

compensation, and for an additional equal amount as liquidated damages.[2]
29 U.S.C. § 216(b).  An employee's claim is subject to a two-tiered statute of
limitations: two years for ordinary violations and three years for willful violations.
29 U.S.C. § 255(a).  To establish a willful violation, the employee must provide
sufficient evidence indicating that the employer "either knew or showed reckless
disregard" as to whether its conduct was prohibited by the FLSA.  McLaughlin v.
Richland Shoe Co., 486 U.S. 128, 133 (1988).  Simple negligence on the part of an
employer is not sufficient to constitute a willful violation.  Id.  An employer does not
willfully violate the FLSA if it acts reasonably in determining its legal obligations
under the Act.  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 273 (3d Cir.
2010).

In the case *sub judice*, Bettger alleges that (1) she should have been
compensated for time spent driving from her home to her first store assignment of
the day; and (2) she was not compensated for all of the time she spent performing
administrative tasks at home.[3]  Based on the procedural history of this case, Bettger
is limited to recovering any unpaid overtime compensation accruing after April 21,

---

[2] This provision also imposes liability for any non-payment of straight-time
wages that causes an employee's effective rate of pay to fall below the statutory
minimum wage.  See 29 U.S.C. § 206.  Bettger has not pleaded or alleged that she
was paid less than the minimum wage for any pay period.

[3] Bettger concedes that she is not entitled to additional compensation for any
time spent working at her assigned store locations.  (Doc. 31 at 36).

2008.[4]  Moreover, the time period applicable to Bettger's claim ends at the pay

period of March 26, 2009, when she switched to part-time status.[5]  This entire claim

period falls outside of the two-year statute of limitations period.  Thus, Bettger must

establish that Crossmark willfully violated the FLSA during this time period to

recover any compensation owed.

> 1.    *Morning Commute*

Crossmark asserts that Bettger is not entitled to additional compensation for

the time she spent driving from her home to her first store assignment of the day.[6]

Bettger claims that her morning drive time is compensable under the "continuous

workday" rule, because she performed "principal activities" at home prior to

commuting to her first job location.  (Doc. 37 at 37-39).

---

[4] The statute of limitations was tolled when Bettger joined the putative collective action on February 9, 2011.  The statute of limitations began running anew when she was dismissed from the collective action on November 14, 2012, until she filed her complaint in the instant case on January 24, 2013.  (See Doc. 13). Bettger has not filed any motion for equitable tolling for that 71 day period in this court.  Thus, the three-year statute of limitations bars any claims for compensation accruing before April 21, 2008.

[5] Bettger concedes that her claim for wages ends at the pay period of March 26, 2009.  (Doc. 31 at 36).

[6] The parties do not dispute that Crossmark paid Bettger for her commute time to the extent that the drive from home to her first store exceeded 40 miles or one hour.  (Doc. 27 ¶ 20; Doc. 31 ¶ 20; Doc. 33 ¶ 20).  Moreover, Bettger is only seeking additional compensation for her morning commute, not for her commute at the end of the day.  (Doc. 27 at 8 n.4; Doc. 31 at 37-39).  She also concedes that she was paid for all the time she spent driving between stores during the day.  (Doc. 28 ¶ 21; Doc. 31 at 21-22 ¶ 21; Doc. 33 ¶ 21).

The Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, narrowed the FLSA's previously broad application by providing that employers are exempt from liability for failure to compensate employees for

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

The Supreme Court has clarified that any activities that are "integral and indispensable" to "principal activities" are themselves "principal activities" and are therefore compensable under the FLSA regardless of when they are performed. IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005).  The Department of Labor's "continuous workday" rule provides that the exemptions from FLSA coverage under § 254(a) do not apply to the periods of time between the employee's performance of the first principal activity and the last principal activity of a continuous workday.  29 C.F.R. § 790.6(a).

Commuting time from home to work is not ordinarily compensable under the FLSA.  29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment.").  In Kuebel v.

Black & Decker, 643 F.3d 352 (2d Cir. 2011), a case factually similar to the instant matter, the court concluded that the plaintiff's routine administrative tasks, which he performed at home, did not render his commute time compensable under the continuous workday rule.  Specifically, the Kuebel court reasoned that the commute time was not compensable because it was not necessary for the plaintiff to perform the administrative tasks "immediately before leaving home, or immediately after returning home."  643 F.3d at 361.  The Kuebel court compared its factual situation to that contemplated by 29 C.F.R. § 785.16, which applies when determining whether time spent waiting is compensable.  Id. at 360.  This regulation provides that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked."  29 C.F.R. § 785.16(a).  See also Rutti v. LoJack Corp., Inc., 596 F.3d 1046, 1059-61 (9th Cir. 2010) (holding that the "continuous workday" doctrine did not entitle the plaintiff to compensation for his travel time to and from job sites in part because he could complete the applicable administrative task at any time between 7:00 p.m. and 7:00 a.m.).  Thus, the Kuebel court affirmed the district court's grant of summary judgment to the employer on this basis.

The Eastern District of Tennessee applied this same rubric to another Retail Representative's FLSA claim against Crossmark.  See Bowman v. Crossmark, Inc., Civ. A. No. 3:09-CV-16, 2012 WL 2597875, at *6-8 (E.D. Tenn. July 5, 2012).  Nevertheless, the Bowman court determined that a genuine dispute of material fact

11

existed concerning whether the plaintiff was required to perform administrative

tasks immediately prior to leaving for her first retail location and immediately after

returning home from her last retail location.  Id. at *8.  Thus, the court denied

summary judgment.

Unlike in Bowman, in the case *sub judice*, Bettger has failed to present any

evidence that Crossmark required her to check e-mail, load her car, or perform

other administrative tasks *immediately* prior to driving to her first retail location.[7]

(See Doc. 28 ¶ 17; Doc. 31 at 19-20 ¶ 17; Doc. 33 ¶ 17).  Bettger has also failed to

present any evidence that she was prohibited from making detours for personal

errands while driving to her first store location or that Crossmark otherwise

---

[7] Federal Rule of Civil Procedure 56(c)(1) requires the non-movant to establish a genuine dispute of material fact by either "citing to particular parts of materials in the record" or "showing that the materials cited [by the movant] do not establish the absence of presence of a genuine dispute."  Bettger attempts to dispute this fact, citing to portions of her deposition transcript where she merely explains why it was beneficial for her to perform administrative tasks on the morning of a job assignment as opposed to doing it once a week.  (See Doc. 31-1, Ex. 1 at 176:9-25, 177:1).  Bettger also cites to the deposition transcripts and affirmations of Crossmark employees and supervisors who worked in different regions.  (Doc. 31 at 19-20 ¶ 17).  None of these individuals possess any personal knowledge of Bettger's work conditions, compensation, or instructions from any of her supervisors.  Moreover, the record is devoid of evidence from which a jury could reasonably conclude that Crossmark maintained some sort of unwritten national policy compelling the completion of administrative tasks prior to the morning commute.  (See Postiglione, Civ. A. No. 11-960, Doc. 68 at 11-13).  Thus, the depositions or affirmations of other Crossmark employees are irrelevant to the court's disposition of Bettger's individual FLSA case.  See Bowman v. Crossmark, Inc., No. 3:09-CV-16, 2012 WL 2597875, at *8 n.6 (E.D. Tenn. July 5, 2012) (refusing to consider affirmations from litigants in a New Jersey case against Crossmark because "[w]hat retail representatives were told in New Jersey is not relevant to what [the plaintiff] was told in Tennessee by different supervisors.").

controlled her activities during her morning commute.[8]  (See Doc. 28 ¶ 19; Doc. 31

at 21 ¶ 19; Doc. 33 ¶ 19).  Indeed, Bettger was largely able to plan her own schedule

by deciding which of her assigned stores to visit on which days and in what order to

visit them, as long as she completed the assignments within a two-week time frame.

(Doc. 28 ¶ 15; Doc. 31 at 19 ¶ 15; Doc. 33 ¶ 15).

Hence, there is no genuine dispute that Bettger had flexibility in deciding

when to complete her administrative tasks.  There is nothing in the record

indicating that Crossmark required Bettger to complete these tasks immediately

prior to leaving for her first assigned store location of the day.  The "continuous

workday" rule does not apply and Bettger is not entitled to additional compensation

for her entire commute time.

Even if Bettger was entitled to additional compensation for her morning

commute in 2008 and early 2009, there is no evidence that Crossmark acted in

knowing or reckless disregard of the law.  The court notes that the Department of

Labor previously endorsed a drive-time policy substantively identical to

Crossmark's drive-time policy.  See U.S. Dep't of Labor Op., 1999 DOLWH LEXIS

9, at *5-6 (Jan. 29, 1999) ("We would not take exception to a practice that treats one

hour of commuting time as non-compensable home-to-work travel, and that treats

all travel time in excess of that amount as hours worked.").  In light of these facts, a

---

[8] Bettger's opposition papers cite to a portion of her deposition transcript that does not contradict this statement.  (See Doc. 31-1, Ex. 1 at 168:15-21).  As discussed *supra*, the court has not considered the affirmations submitted by other Crossmark employees who worked in different regions.

jury could not reasonably find that Crossmark willfully violated the FLSA and

Crossmark is entitled to judgment as a matter of law on this issue.

## 2.   *Administrative Tasks*

Crossmark further contends that Bettger is not entitled for any overtime she

spent performing administrative tasks that she did not report in SalesTrak.  To

establish liability under the FLSA on a claim for unpaid overtime, an employee

bears the burden of proving that she performed work for which she was not

properly compensated.  Alers v. City of Philadelphia, 919 F. Supp. 2d 528, 558 (E.D.

Pa. 2013).  The employee must also demonstrate that the employer had either actual

or constructive knowledge of that work.  Id.  In addition, to be entitled to damages,

an employee must prove by a preponderance of the evidence the amount and extent

of the uncompensated work that she performed.  Anderson v. Mt. Clemens Pottery

Co., 328 U.S. 680, 686 (1946) *superseded by statute on other grounds as stated in*

Sandifer v. U.S. Steel Corp., 134 S. Ct. 870 (2014).

The parties primarily dispute whether Crossmark had actual or constructive

knowledge of Bettger's alleged overtime work in light of the fact that Bettger did

not record all her administrative time worked in the SalesTrak system.  When an

employer is not aware that an employee has worked overtime, and the employee

fails to notify the employer or prevents the employer from learning of the work, the

employer's failure to pay compensation for those hours is not a violation of the

FLSA.  Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981);

see also Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230 (10th Cir. 2012); White v.

14

Baptist Memorial Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012); Newton v. City of Henderson, 47 F.3d 746 (5th Cir. 1995).  However, "when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." Allen v. Board of Public Education for Bibb County, 495 F.3d 1306, 1314 (11th Cir. 2007).

Bettger contends that Crossmark had actual or constructive knowledge that she was working uncompensated overtime hours because (1) Bettger's administrative work was primarily done on Crossmark's website, and, "as the provider of the portal, Crossmark 'knows' which employees work upon its site, when they log in, and (presumably) when they log off;" and (2) Bettger told Swaggert that she worked more administrative hours than those for which she was paid and Swaggert advised her against reporting those hours.  (Doc. 31 at 41-42).

Bettger's first argument is entirely unavailing.  Bettger contends that every time she performed administrative tasks, she logged onto Crossmark's website using a unique login name and password.  (Id. at 36).  She claims that "Crossmark's website is a virtual workplace" and that her "logging in is the functional equivalent of punching a time clock."  (Id.)  Hence, Bettger asserts that Crossmark possessed actual knowledge of the amount of time Bettger spent working on the website, and therefore knew that she was not reporting all the time she actually worked in SalesTrak.  Fatal to Bettger's argument, it is uncontroverted that Crossmark did not maintain records of its employees' login and logout times or login duration on Crossmark's website.  (See Doc. 32 at 3-4).  Bettger has submitted no evidence

15

tending to prove otherwise.  Thus, Bettger's argument that Crossmark possessed actual knowledge of the time Bettger spent on administrative tasks is meritless.

Bettger also asserts that Crossmark possessed actual or constructive knowledge through Bettger's conversations with Swaggert.[9]  Bettger repeatedly testified during her deposition that Swaggert instructed her to report only 30 minutes of administrative time per day.  (Doc. 31-1, Ex. 1 at 101, 102, 134, 143).  According to Bettger, if she reported working overtime, Swaggert would call her and tell her that "we have to keep the week under 40 hours unless there's an exception."  (Id. at 134:23-24).  Bettger states that she advised Swaggert that she was working more administrative time than she was allowed and Swaggert responded, "Well, my hands are tied.  You can only - you can't put that in."  (Id. at 190:5-8).  Bettger testified that when she complained to Swaggert about not being able record all of her work hours, Swaggert "didn't feel there was [sic] any other options, that that was the policy that she was given as well."  (Id. at 108-109).

Crossmark emphasizes that Bettger cannot recall whether Swaggert told her to keep her reported weekly hours under 40 even if she actually worked more than 40 hours, or simply told her to get her work done within 40 hours.  (Doc. 28 ¶ 37; Doc. 31 at 31 ¶ 37; Doc. 33 ¶ 37; Doc. 31-1, Ex. 1 at 138:9-19).  Crossmark further contends that during Bettger's period of full-time employment in 2008 and early 2009, Bettger reported and was paid for overtime in varying amounts on several

---

[9] Curiously, neither party deposed Swaggert during discovery.  (See Doc. 31 at 41 n.2).  The only evidence of Swaggert's statements come from Bettger herself.

occasions.  (Doc. 28 ¶ 29; Doc. 31 at 25-26 ¶ 29; Doc. 33 ¶ 29).  Crossmark also notes

that Bettger entered more than 30 minutes a day or 2.5 hours a week of

administrative time into SalesTrak on numerous occasions in 2008, and was paid

for it.  (Doc. 28 ¶ 33; Doc. 31 at 28-29 ¶ 33; Doc. 33 ¶ 33).

These facts certainly weigh in favor of Crossmark, but they are not sufficient

to award it summary judgment in light of the proffered evidence that Swaggert

knew that Bettger was working more administrative hours and encouraged her not

to report it.  The court must construe all reasonable inferences in the light most

favorable to the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

255 (1986).  With that requirement in mind, the court finds that a jury could

reasonably conclude that Bettger's paid entries for overtime and time spent

performing administrative tasks nevertheless did not reflect the entire amount of

time Bettger worked.  A jury could reasonably conclude that Swaggert directed

Bettger to refrain from reporting overtime hours that she knew Bettger worked.

For the same reasons, a jury could also reasonably find that Crossmark, through

Swaggert's actions, willfully violated the FLSA as it applies to Bettger's

compensation.[10]  See Stanislaw v. Erie Indemnity Co., Civ. A. No. 07-1078, 2012 WL 517332, at *10 (W.D. Pa. Feb. 15, 2012) ("Courts have consistently concluded that a violation is willful where an employer intentionally discourages or inhibits employees from accurately reporting overtime." (citing cases)).

Crossmark argues that it is nevertheless entitled to judgment because Bettger is unable to establish damages, or the "amount or extent of unpaid time she supposedly worked." (Doc. 27 at 15-16).  Crossmark notes that Bettger never attempted to keep a personal record of her hours worked.  (Id.)  Bettger responds that production of her own estimates is sufficient to survive summary judgment.

Ordinarily, an employee must prove by a preponderance of the evidence that she "did not receive the wages to which [she was] entitled under the Act." Anderson, 328 U.S. at 686.  Under this standard, an employee may not satisfy her burden of proof by offering an estimated average of overtime worked.  Id.  It is the duty of the employer to keep proper records of wages and hours worked, and when the employer has kept proper and accurate records, the employee may easily satisfy

---

[10] Bettger also asserts that Crossmark willfully violated the FLSA because Crossmark's written policy was "routinely disregarded," as evidenced by the depositions and affirmations from other employees and supervisors of Crossmark. (Doc. 31 at 43-45).  As discussed *supra*, these depositions and affirmations are irrelevant for the purposes of Bettger's individual FLSA case.  The record does not support the finding of an unwritten national policy—or any consistent disregard of Crossmark's written policy—prompting Retail Representatives to under-report the amount of time spent performing administrative tasks.  (See Postiglione, Civ. A. No. 11-960, Doc. 68 at 11-13 ("The disparity of the claims among the named plaintiffs, the deposition testimony of the employees, and the testimony of the one supervisor deposed make it more likely that any illegal overtime policies were implemented by individual supervisors.")).

her burden of proof by securing those records through discovery. <u>Id.</u> at 687. However, if the employer keeps inaccurate or inadequate records, the employee's burden of proof is relaxed. <u>Id.</u> In that situation, an employee meets her burden if she can establish that she performed uncompensated work and she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." <u>Id.</u> The burden then shifts to the employer to produce more precise evidence of the amount of work performed or evidence to negate the inference drawn from the employee's evidence. <u>Id.</u> at 687-88. If the employer fails to satisfy its burden, the court may then award an approximate amount of damages to the employee. <u>Id.</u> at 688.

Bettger asserts that Crossmark's failure to keep records of the times when Bettger was logged onto its website excuses Bettger's mere provision of an estimate of the amount of unpaid compensation to which she is entitled. (<u>See</u> Doc. 31 at 36, 40-42, 45). In other words, Bettger suggests that the FLSA required Crossmark to maintain login and logout records for each employee visiting its website, and its failure to do so entitles Bettger to only present a "just and reasonable inference" of the extent and amount of her uncompensated work.

This argument is unavailing. Under the FLSA, Crossmark has an obligation to keep and maintain accurate records of the hours worked by employees. 29 U.S.C. § 211(c). Such records must contain the employee's name, the workweeks for which salary or wages are paid, hours worked each workday, and the total hours worked each workweek. <u>See</u> 29 C.F.R. § 516.2(a)(1-12). Crossmark alleges that it

satisfied its recordkeeping duties under the FLSA by maintaining SalesTrak system and payroll records, which Crossmark has already produced to Bettger's counsel. (Doc. 32 at 3).  Such records are based on time reports that employees submit through Crossmark's website.  (Id.)

There is no reason to believe that these payroll records would not ordinarily satisfy the FLSA's requirements.  It is not the form of the records maintained—the SalesTrak system and payroll records as opposed to records derived from employees' visits to Crossmark's website—that is problematic in the case *sub judice*. Instead, it is the claim that Crossmark's payroll records, created through the SalesTrak system, are an inaccurate reflection of Bettger's work hours, thus reducing her compensation.

An employer may delegate to its employees the duty to record their hours, but it does so at its own risk.  See Goldberg v. Cockrell, 303 F.2d 811, 814 n.1 (5th Cir. 1962) (("[The employer] cannot escape the record keeping provisions of the Act by delegating that duty to his employees.") (quoting Mitchell v. Reynolds, 125 F. Supp. 337, 340 (W.D. Ark. 1954))).  If an employer knows that an employee failed to properly record or claim her overtime hours and the employer does not take active steps to correct the problem, it may not subsequently deny the employee compensation for the hours worked.  See Forrester, 646 F.2d at 414 (noting that an employer may not "escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation.").  It follows that when an employee omits relevant information when contributing to the

employer's payroll records as a result of the employer's instruction or encouragement, the employee may invoke <u>Anderson</u>'s relaxed standard for incomplete or inaccurate records. <u>See</u> <u>Kuebel</u>, 643 F.3d at 363-64 ("At least where the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets.").

Crossmark is not required to maintain records of employee visits to its website to conform to the FLSA's requirements.[11]  Nevertheless, in light of the evidence that Bettger failed to record all hours worked in Crossmark's existing payroll system—allegedly at Swaggert's direction—<u>Anderson</u>'s relaxed standard for damages applies.  The court finds that a jury could reasonably conclude that Bettger has produced a just and reasonable inference of the amount and extent of her uncompensated work.  Though marginal at best, Bettger's claim for overtime compensation based on the unreported time she spent performing administrative tasks survives summary judgment.

> **B.**    **Motion *in Limine***

Crossmark moves the court to exclude from trial any argument, testimony, or evidence relating to the following issues: (1) any reference to other lawsuits or complaints by other current or former Crossmark employees about alleged non-

---

[11] Similarly, Bettger's argument that a 2008 lawsuit against Crossmark "put Crossmark on notice that it should track the administrative time of its employees" through Crossmark's website is irrelevant and unavailing.  (Doc. 31 at 43-44).

payment or underpayment of wages, and any reference to Bettger's previous involvement in the <u>Postiglione</u> collective lawsuit; (2) any testimony from current or former employees or supervisors of Crossmark who do not have personal knowledge of Bettger's employment during the relevant time period; (3) any argument or testimony about any electronic records of the times Bettger logged onto or off of Crossmark's employee website; and (4) any argument that Crossmark had any legal duty to keep records of the times Bettger logged onto or off of Crossmark's employee website, or the duration of time she spent logged into the website.  (Doc. 35).

With regard to the first two issues, Bettger asserts that evidence of other lawsuits, as well as testimony from witnesses who have first-hand knowledge of Crossmark's pay practices, will be relevant at trial to establish Crossmark's willful violation of the FLSA.  However, as discussed *supra*, Bettger has failed to establish that Crossmark possessed any national, unwritten policy concerning the compensation and work requirements of Retail Representatives.  (See Postiglione, Civ. A. No. 11-960, Doc. 68 at 10 ("Despite bringing a sampling of named plaintiffs from across the country, Plaintiffs have not demonstrated the existence of a nationwide policy; they have only demonstrated the lack of any such common policy.")).  Instead, after summary judgment, Bettger's claim is limited to whether her supervisor instructed her to limit her reporting of hours spent working on administrative tasks.  The other proffered supervisors and employees of Crossmark have no personal knowledge relevant to this issue.  Moreover, any lawsuit or

22

complaint filed by employees other than Bettger, involving different Crossmark supervisors, could not possibly have provided Crossmark with notice that Bettger's supervisor was instructing her not to record all of her time spent working on administrative tasks. This evidence is therefore irrelevant. To the extent that it is relevant, its minimal probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and undue delay. See FED. R. EVID. 403.

The court will also exclude any evidence or argument relating to the maintenance, or lack thereof, of login and logout records from Crossmark's website. As discussed *supra*, it is uncontroverted that Crossmark did not maintain records of its employees' login and logout times or login duration on Crossmark's website. (See Doc. 32 at 3-4). Any evidence offered in this vein is irrelevant to establishing Crossmark's actual or constructive knowledge or willfulness. Moreover, the court has already determined that Crossmark was not legally required to maintain such website records. Hence, Bettger is also barred from presenting any argument or theory that Crossmark was required to do so.

## V.  **Conclusion**

For the foregoing reasons, the court will grant Crossmark's motion (Doc. 26) for summary judgment in part and deny it in part.  The court will also grant Crossmark's motion (Doc. 34) *in limine* in its entirety.  An appropriate order follows.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        June 17, 2014